**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NAVAJO HEALTH FOUNDATION,            )
                                     )
                    Plaintiff,       )   Case No.: 2:19-cv-00329-GMN-EJY
         vs.                         )
                                     )   **ORDER**
RAZAGHI DEVELOPMENT COMPANY,         )
LLC, *et. al*,                       )
                                     )
                    Defendants.      )

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 18), filed by Plaintiff Navajo Health Foundation ("Plaintiff"). Defendants Razaghi Development Company, LLC, Ahmad R. Razaghi, and Tausif Hasan (collectively "Defendants") filed a Motion to Stay Briefing and Consideration of Plaintiff's Motion for Preliminary Injunction, (ECF No. 22), or in the alternative, a Motion for Extension of Time to File Response, (ECF No. 23). For the reasons stated herein, Plaintiff's Motion is denied, and Defendants' Motions are denied as moot.

**I.    BACKGROUND**

Plaintiff, an Arizona non-profit corporation, administers and operates Sage Memorial Hospital (the "hospital"), which is located within the territorial boundaries of the Navajo Nation. (Compl. ¶ 7, ECF No. 1). In 2018, Defendant Razaghi served as the contract CEO for the hospital and was the sole and controlling member of Defendant Razaghi Development Company, LLC ("RDC"), a healthcare management company. (*Id.* ¶ 9). Defendant Hasan served as contract CFO for Sage Memorial and was an employee of RDC. (*Id.* ¶ 10). RDC was under contract to provide management services for the hospital. (*Id.* ¶ 29). Plaintiff alleges, *inter alia*, that in July 2018, the hospital's board of directors (the "Board") began to question its contractual relationship with Defendants. (*See id.* ¶¶ 49–53). On August 20, 2018 the Board

convened an executive session meeting and discussed the hospital's contract with RDC management and payments made to RDC. (*Id.* ¶ 54). At that time, it was decided that the Board would not be approving an incentive bonus for Razaghi that year. (*Id.*). Plaintiff further alleges that on August 27, 2018, Hasan called the hospital's finance department seeking the status of a $10,855,134.15 RDC invoice submitted earlier that day. (*Id.* ¶ 55). The subject line on the invoice merely referenced a "Contract Termination Fee, Section 5.D." (*Id.*). After Hasan's phone call, a finance staff member then input the invoice into the hospital's payment system and notified Hasan. (*Id.*). Hasan then transferred monies from the hospital's bank accounts into the hospital's general operating account to cover the invoice. (*Id.*). Minutes thereafter, Hasan in his capacity as contract CFO, approved the $10,855,134.15 invoice, and payment was issued to RDC. (*Id.*). Plaintiff alleges that the invoice contained misrepresentations; the $10,855,134.15 transfer was not authorized by the hospital's Board; and that Defendants' actions constitute fraud. (*See id.* ¶¶ 2, 55, 62)

On February 22, 2019, Plaintiff filed a Complaint, (ECF No. 1), against Defendants asserting the following causes of action: (1) Declaratory and Injunctive Relief; (2) Federal Civil RICO; (3) Federal Civil RICO Conspiracy; (4) Nevada Civil RICO; (5) Nevada Civil RICO Conspiracy; (6) Conversion; (7) Civil Conspiracy; (8) Tortious Interference with Contract; (9) Common Law Fraud; (10) Constructive Fraud; and (11) Aiding and Abetting. The parties' motions now follow.

## II.   LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must establish four elements: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4)

"that an injunction is in the public interest." *Id*. at 20.  "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. at 24 (internal quotation marks omitted).

The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiff's Motion for Preliminary Injunction seeks what it characterizes as "two very simple things": (1) a hearing to ascertain the location of the $10,855,134.15 allegedly taken by Defendants, and (2) an order directing those funds be placed into a trust account maintained by a third-party custodian pending the adjudication of this case. (Pl.'s Mot. Prelim. Inj. ("Mot") at 2, ECF No. 18).  In order to determine whether this "extraordinary remedy" is warranted, *Winter*, 555 U.S. at 22, the Court will first address whether Plaintiff's requested injunction is prohibitory or mandatory.  The Court will then consider whether Plaintiff has established the requisite preliminary injunction elements under *Winter*.

#### A. Plaintiff requests a mandatory preliminary injunction

A preliminary injunction may be either prohibitory or mandatory.  "A prohibitory injunction prohibits a party from taking action and preserves the *status quo* pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotations and alterations omitted). The status quo means "the last, uncontested status which preceded the pending controversy." *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984).

In contrast, a mandatory injunction "orders a responsible party to 'take action'" *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996).  Mandatory injunctions are disfavored and "are not

granted unless extreme or very serious damage will result." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980).  They "are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.*

Here, Plaintiff's requested injunction is mandatory because it seeks to compel Defendants to do something they are not currently doing; that is, deposit funds into a third-party trust account.  Insofar as Plaintiff represents that granting the injunction would return Plaintiff to the *status quo* prior to Defendants' allegedly wrongful taking of $10.8 million, Plaintiff is mistaken. (Mot. at 11).  The status quo means "the last, uncontested status which preceded the pending controversy.'" *Regents of the Univ. of Cal.*, 747 F.2d at 514.  And the "last uncontested status" is not measured from the time at which the first dispute at issue in a case arose, but from the time the complaint was filed. *See N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (preliminary injunction prohibiting enforcement of new furlough policy was "prohibitory" because, "at the time the suit was filed" furlough contracts had been signed but no furlough days had been taken); *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (preliminary injunction seeking to compel USC to install plaintiff as head coach was "mandatory" because on "the date th[e] action was filed in state court, Coach Stanley was no longer a USC employee" and her contract had expired).  Indeed, Plaintiff is challenging Defendants' August 2018 withdrawal of $10,855,134.15 from Plaintiff's account.  Thus, according to Plaintiff, the monies were taken *before* Plaintiff filed its Complaint in February 2019.

Because Plaintiff is seeking to compel Defendant to do something affirmative, the preliminary injunction is mandatory and must be considered under a stricter standard.  Plaintiff must demonstrate that the "facts and law clearly favor" a preliminary injunction. *Id.*

///

**B.**     ***Winter*** **test is not met**

Plaintiff first argues that it is likely to succeed on the merits of its Arizona common law fraud and constructive fraud claims. (Mot. at 4–9).  However, the Court will begin by addressing the element of irreparable harm.  Indeed, the basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies. *Sampson v. Murray*, 415 U.S. 61, 88 (1974).  "Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (citing *Sampson*, 415 U.S. at 61–62).  "[A] preliminary injunction usually will be denied if it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2019).

Here, the harm Plaintiff asserts—the wrongful taking of $10,855,134.15 from its bank account—can be adequately addressed with legal remedies in the form of money damages.  To be sure, Plaintiff does maintain that it has suffered, or is likely to suffer, other harms.  For example, Plaintiff submits that "the harm [it will suffer] involves damage to reputational interests of a hospital serving an indigent population located on an Indian reservation where residents are often distrustful of outsiders given the unfortunate history in this country involving native populations." (Mot. at 10).  However, Plaintiff cites no legal authority suggesting that this type of harm warrants a preliminary injunction under the relevant legal standard.  Moreover, Plaintiff notes that "the money taken by Defendants was, and continues to be, needed to provide ongoing medical care for the indigent population served by the hospital." (*Id.*).  But even if the Court granted the requested relief, it would not alleviate the hospital's financial needs, as the $10,855,134.15 would be placed in a third-party account pending the adjudication of this case.

Lastly, Plaintiff maintains that Defendants have placed Sage Memorial under the scrutiny of federal and Navajo authorities. (*Id.* at 11). Plaintiffs rely on the Complaint's allegations which provide that in a prior settlement with the United States, the United States agreed to pay the hospital $122,500,000.00. (Compl. ¶ 36). Further,

> the settlement agreement . . . expressly prohibited the hospital from providing payment to any management company or affiliated entity. Notably, the agreement also singled out Razaghi by name by further providing that "[i]f Ahmad R. Razaghi or any current officer or officer-level employee of a Razaghi-related entity is convicted of a felony crime of fraud related to the management of [the] [h]ospital or any federal health care program operated by [the Hospital] within 5 years of the effective date of this Settlement Agreement, [the Indian Health Service] may conduct additional monitoring on the expenditure of the Settlement sum . . . ." This provision clearly evinced the federal government's concerns regarding Razaghi's potential for fraudulent conduct.

(*Id.*). But those allegations do not demonstrate that the federal or Navajo authorities have placed Plaintiff under additional scrutiny as a result of the conduct challenged in the instant case. And Plaintiffs do not allege that Defendant Razaghi or any "officer-level employee of a Razaghi-related entity" has been convicted of a felony crime of fraud related to the management of the hospital or any federal health care program operated by the hospital, thereby subjecting Plaintiff to additional monitoring from the Indian Health Service (as per the settlement agreement). More importantly, even assuming Plaintiff asserted these additional facts, Plaintiff nevertheless has not explained how the requested relief would address the purported harm.

In sum, Plaintiff has not demonstrated that it is likely to suffer irreparable harm in the absence of preliminary relief. This is especially true in light of the very high burden for a mandatory preliminary injunction. Because Plaintiff has failed to satisfy the necessary irreparable harm prong of the *Winter* test, the Court need not engage in additional analysis of the remaining elements. Plaintiff's Motion for Preliminary Injunction is denied.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 18), is **DENIED**.

**IT IS FURTHER ORDERED** that in light of the above, Defendants' Motion to Stay Briefing and Consideration of Plaintiff's Motion for Preliminary Injunction, (ECF No. 22), or in the alternative, a Motion for Extension of Time to File Response, (ECF No. 23), are **DENIED as moot**.

**DATED** this 29 day of May, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court