UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NAVAJO HEALTH FOUNDATION – SAGE MEMORIAL HOSPITAL, INC. (doing business as "Sage Memorial Hospital"); an Arizona non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAZAGHI DEVELOPMENT COMPANY, LLC; a Nevada limited liability company (doing business as "Razaghi Healthcare"), AHMAD R. RAZAGHI; individually, TAUSIF HASAN; individually, DOES 1-10; ROES A-Z;<br><br>Defendants. | Case No. 2:19-cv-00329-GMN-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>Re:  Defendant's Motion for Rule 11 Sanctions (ECF No. 174) |

Pending before the Court is Defendants' Motion for Rule 11 Sanctions.  ECF No. 174.  The Court has considered Defendants' Motion, Plaintiff's Opposition (ECF No. 183), and Defendants' Reply (ECF No. 198).

## I.    RELEVANT BACKGROUND

The litigation between Plaintiff Navajo Health Foundation – Sage Memorial Hospital, Inc.[1] and Defendants Ahmad Razaghi ("Razaghi"), Tausif Hasan ("Hasan"), and Razaghi Development Company, LLC d/b/a Razaghi Healthcare ("RH")[2] has spanned over three and a half years.  The issues are complex, comprise of multiple sophisticated parties, and involve a tangled web of events, some of which transpired almost two decades ago.  The Court does not include all underlying factual allegations or legal arguments made by the parties; nor does it recite the lengthy procedural history of the case.  At the time of this Report and Recommendation, Plaintiff filed its Third Amended Complaint (ECF No. 192), which Defendants have moved to dismiss (ECF No. 201).  The latter has yet to be fully briefed.

---

[1]    Plaintiff Navajo Health Foundation – Sage Memorial Hospital, Inc. shall be referred to herein as "Plaintiff," "Sage" or "Sage Memorial."

[2]    Razaghi, Hasan, and RH may be referred to herein as "Defendants."

Defendants bring this Motion for Rule 11 Sanctions (the "Sanctions Motion") based on factual allegations made by Plaintiff in its Second Amended Complaint (ECF No. 144) (the "SAC"). Defendants seek sanctions, including Defendants' attorneys' fees, against Plaintiff and Plaintiff's counsel as permitted by Rule 11(c)(1) based on three categories of allegations made by Plaintiff in the SAC. These include:

1.   Defendants engaged in certain conduct without Plaintiff's knowledge or consent resulting in fraud being committed by Defendants against Plaintiff. ECF No. 174 at 2.

2.   Razaghi selected and retained attorney Stephen Hoffman ("Hoffman") to represent the Sage Memorial Board of Directors (the "Board") in contract negotiations for the purpose of deceiving the Board into approving a contractual termination fee that was highly lucrative for Defendants. *Id.*

3.   Defendants fraudulently charged hourly rates in excess of those approved by the Board and sought payment from Plaintiff for services and expenses related to other tribal entities without Plaintiff's knowledge and consent. *Id.* at 2–3.

Following a thorough review of the Sanctions Motion, the Response, and Reply, the Court finds Rule 11 sanctions are not appropriate. The Sanctions Motion is denied. Plaintiff's request that the Court sanction Defendants for the filing of their Sanctions Motion is also denied.

## II.   LEGAL STANDARD

The filing of documents—especially complaints—with a federal court carries with it a gravity of importance and duty of integrity. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). The analysis of whether a party has breached that duty of integrity is conducted under Federal Rule of Civil Procedure 11 ("Rule 11").

Rule 11 provides in pertinent part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
     (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**(c) Sanctions**

(1) In General.  If, after notice and reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation…

Fed. R. Civ. P. 11(b)-(c).  "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."  *Mattel, Inc.*, 286 F.3d at 1127 (internal citations and quotation marks omitted).  The Court is cognizant of, and takes seriously, the Ninth Circuit's instruction that district courts are to use "restraint" and "extreme caution" when determining the propriety of Rule 11 sanctions.  *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

## III.    DISCUSSION

A.    <u>Was Plaintiff's SAC objectively legally or factually baseless?</u>

In its SAC, Plaintiff alleges that Defendants are liable for damages under the following counts: (1) 18 U.S.C. § 1962(c) ("Federal Civil RICO"); (2) 18 U.S.C. § 1962(d) ("Federal Civil RICO Conspiracy"); (3) Fraud; (4) Civil Conspiracy and Aiding and Abetting; (5)-(7) Breach of Fiduciary Duty; (8) Rescission of the Second Amendment to the CEO Services Contract; (9) Rescission of the First Amendment to the CEO Services Contract; (10)-(11) Breach of Contract; (12) Breach of the Covenant of Good Faith and Fair Dealing; (13) Conversion; (14) Constructive Fraud; (15) Unjust Enrichment; and (16) Constructive Trust.  Rule 11 sanctions are appropriate in situations in which there is no basis, both from a legal and factual perspective, for bringing the lawsuit.  *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986).

1         *1.    Defendants Contend Plaintiff and Plaintiff's Counsel Knew, or Should Have*
2             *Known, Sage's Executives and Board Members (All of Whom Were Agents of*
               *the Corporation) Participated in and Knew of the "Fraudulent" Actions now*
3             *Asserted Against Defendants.*

4    A main thrust of Defendants' arguments revolve around their contention that, although a

5    great deal of operational control and management oversight was granted to Defendants, Plaintiff

6    retained "full authority" and "ultimate control" over Sage Memorial. ECF No. 174 at 5. Defendants

7    argue that Christi El-Meligi ("El-Meligi") and Netrisha Dalgai ("Dalgai") were corporate officers of

8    Sage[3] and, therefore, agents of Plaintiff who owed fiduciary duties to the corporation.[4] Under the

9    principle of respondeat superior,[5] Plaintiff was bound by the actions taken by El-Meligi and Dalgai.

10   ECF No. 174 at 12. As a consequence of the Board's, El-Meligi's, and Dalgai's knowledge of and

11   participation in the acts at issue, Plaintiff cannot recover any damages emanating from the fraudulent

12   acts alleged in the SAC.[6]  *Id.* at 4.

13       Plaintiff does not present arguments regarding the duties and requirements that an agent of a

14   corporation owes to that corporation. And, nowhere in Plaintiff's response to the Sanctions Motion

15   does it mention the phrase "respondeat superior." Thus, there is arguably no legal dispute that *if* El-

16   Meligi and Dalgai were agents of Sage Memorial, they owed Sage the applicable fiduciary duties.

17   The dispute is, therefore, whether El-Meligi and Dalgai were, in fact, agents of Sage Memorial.

18       Defendants cite evidence demonstrating El-Meligi and Dalgai were agents of Sage

19   Memorial. First, there is a 2013 Board resolution naming El-Meligi as Administrator/successor

20   Chief Executive Officer ("CEO") of Sage. ECF 174-2 at 2. Her position classification and

21   description included a wide array of tasks she was to execute on behalf of Plaintiff. *Id.* at 4-6.

---

3        Navajo Health Foundation – Sage Memorial Hospital, Inc. is an Arizona non-profit corporation headquartered in Ganado, Arizona. ECF No. 1 at 4.

4        Under Arizona law, a corporate officer with discretionary authority owes the corporation the following duties: (1) to act in good faith; (2) to act with the care that an ordinarily prudent person in a similar position would exercise under similar circumstances; and (3) to act in a manner the officer reasonably believes to be in the best interest of the corporation. *See* A.R.S. § 10-842(A).

5        "[U]nder the doctrine of respondeat superior, the conduct of an agent is imputed to the corporation when that conduct is committed within the scope of the agent's employment. … Likewise, the knowledge of a corporate agent is imputed to the corporation if it is acquired by the agent within the scope of his or her employment and relates to a matter within his or her authority." *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 502-03 (1993) (citations omitted).

6        "The doctrine of In pari delicto is that a plaintiff who has participated in wrongdoing cannot recover when he suffers injury as a result of the wrongdoing." *First Beverages Inc. of Las Vegas v. Royal Crown Cola Co.*, 612 F.2d 1164, 1172 (9th Cir. 1980) (citation omitted).

Second, in El-Meligi's declaration she states that she served as Sage's CEO since September of 2013 except for two months during the summer of 2018.  ECF No. 147-3 at 2-3.  Third, El-Meligi states that during a 2015 Board meeting "her only fiduciary responsibility" was "to Sage Memorial Hospital," although she was "employed by Razaghi Healthcare."  ECF No. 174-3 at 18.[7]

Plaintiff counters Defendants' evidence by demonstrating that El-Meligi and Dalgai were employees and agents of the Defendants, not Sage Memorial.  First, the initial Amendments to the CEO Services Contract (ECF Nos. 183-27 at 2 and 18 at 2, respectively) list RH as the party contracting with Plaintiff.  Second, an investigation conducted by Plaintiff revealed that El-Meligi was an employee of RH from July 2013 until July 23, 2018, and that Dalgai was an employee of RH from June 2013 until September 2018.  ECF No. 183-2 ¶¶ 42-43.  Third, an organizational chart attached as an exhibit to Defendants' Sanctions Motion includes a description of El-Meligi serving as CEO and Dalgai serving as Director of Operations under RH, not Sage Memorial.  ECF No. 174-2 at 27.  Fourth, Defendants billed El-Meligi and Dalgai in the same fashion as it billed other RH employees.  ECF No. 183-28 at 2.  Fifth and finally, in August 2018, a letter sent by Razaghi's attorney to the Board expressed RH's concerns over Sage's interactions with El-Meligi and Dalgai.  ECF No. 183-29 at 2.  In addition to other information contained in the letter, Razaghi's counsel referred to El-Meligi and Dalgai as RH's "management consultants" and stated that RH had placed El-Meligi and Dalgai on administrative leave.  *Id.*

Plaintiff and Defendants each vigorously argue their respective positions on the employment status of El-Meligi and Dalgai is correct.  A determination of whose position is factually and legally accurate is not one decided in this Report and Recommendation.  The Court's Rule 11 analysis is not an examination of the "sufficiency or efficacy of allegations in the pleadings,… to emphasize the merits of a party's position, … [or] to intimidate an adversary into withdrawing contentions that are fairly debatable."  *Arcsona Inc. v. Appirio Inc.*, Case No. 21-cv-05019-VKD, 2022 WL 138681, at *2 (N.D. Cal. Jan. 14, 2022) (citing Fed. R. Civ. P. 11(b) and (c) Advisory Committee's Note to

---

[7]    While Plaintiff acknowledges El-Meligi's statement that she owed a fiduciary duty to Sage Memorial (ECF No. 183 at 20, n.12), Plaintiff argues that given the totality of the circumstances, El-Meligi's statement is more appropriately attributed to RH's fiduciary obligations to Sage Memorial and does not establish that El-Meligi was an agent of Sage Memorial.  *Id.*

1993 Amendment). Rather, the question for the Court is whether Plaintiff's position is, objectively, legally and factually baseless. *Id*. (citations omitted). Plaintiff demonstrates sufficient facts underpinning the argument that El-Meligi and Dalgai were employees of RH during the events at issue in this litigation to defeat Defendants' Rule 11 argument. The potential veracity of that claim could play a role at trial in proving one, some, or all the sixteen counts alleged in the SAC. In sum, the Court finds the allegations made by Plaintiff surrounding El-Meligi and Dalgai are not legally or factually baseless.

> 2. *Defendants Assert Plaintiff and Plaintiff's Counsel Were Aware that the Allegations Regarding Razaghi's Selection and Retention of Attorney Hoffman to Represent the Sage Board in Contract Negotiations Were False.*

After the August 12, 2016 Sage Board meeting, the Board approved a resolution replacing Sage Memorial's existing counsel with new counsel—the Lewis Brisbois Bisgaard Smith law firm ("Lewis Brisbois")—a move recommended to the Board by El-Meligi. ECF No. 174-3 at 24-25. Hoffman was (and remains) a partner at Lewis Brisbois, and is the attorney who became heavily involved with Sage Memorial's legal affairs.

The dispute regarding Hoffman arises from his representation of Sage Memorial in negotiations with RH over its management services contract.[8] ECF No. 144 at 25. The product of those negotiations yielded a contract that contained—according to Plaintiff—an "extremely lucrative termination payment" to be paid to Razaghi in the event that he or Sage Memorial terminated the contract, even if for cause. *Id.* at 25-26. Plaintiff's SAC alleges Hoffman, although retained by Sage as its counsel, owed his allegiance to Razaghi, further confirmed by the fact that it was RH, not Sage Memorial, who Hoffman invoiced for his work. ECF Nos. 144 ¶ 112; 183-13, 14, 15. Sage argues that despite numerous detrimental provisions in the Second Amendment to the CEO Services Contract into which it eventually entered, Hoffman made no attempt to explain the Second Amended Contract or its provisions that were potentially detrimental to Sage Memorial. *Id.* 144 ¶ 112. Plaintiff complains that while Hoffman was present for the Board during executive sessions, he was selected, retained, and paid by Razaghi and RH. *Id.* ¶ 233(g).

---

[8] The term used to refer to this management services contract below—and as referred to by the parties in their pleadings—is the "Second Amendment to the CEO Services Contract" or the "Second Amended Contract."

Defendants' main argument is that Plaintiff's assertions regarding Hoffman's loyalties were false when made yet continue to appear in Plaintiff's filings. ECF No. 174 at 2, 14. Defendants discuss Kathleen Bliss who was, at that time, Sage Memorial's criminal defense counsel and the person who "thoroughly thought out and reviewed" the recommendation by Sage CEO El-Meligi to hire Attorney Hoffman—a partner at Lewis Brisbois, Bliss' former law firm. *Id.* Defendants infer that Bliss' knowledge and involvement in Hoffman's selection belies the contention that the Board did not know where Hoffman's loyalty lay. *Id.* at 16. Defendants rely on the August 12, 2016 Board meeting minutes in which El-Meligi reports to the Board that she and the Board Chair "consulted with" Bliss and Sage's general counsel about Lewis Brisbois' competency to represent Sage Memorial in its pending litigation. ECF No. 174-3 at 21. Defendants complain that despite Bliss' knowledge that she and El-Meligi selected and chose to retain Hoffman to represent Sage Memorial, "Plaintiff's counsel improperly submitted the [SAC] alleging 'Hoffman was selected and retained by Razaghi and [RDC].'" ECF No. 174 at 15.

Plaintiff responds that Defendants' reliance on the undisputed fact that Bliss introduced Hoffman to the Sage Board is not relevant to who "selected and retained" Hoffman for the purposes of negotiating with Razaghi in June 2017 over the Second Amendment to the CEO Services Contract. ECF No. 183 at 9-10. Plaintiff contends that the transcription of the meeting minutes referenced by Defendants shows the Sage Board did not have a choice regarding Hoffman and Lewis Brisbois' retention. Plaintiff argues, instead, this firm and lawyer were foisted upon Sage Memorial. *Id.* at 10. To support this point, Plaintiff refers to an August 2018 letter from Razaghi to the Board in which he expressed concern over the Board's hiring of an attorney from another firm to investigate Razaghi's potential conduct. ECF 183-8 at 2-3. The letter states: "I [Razaghi] have selected the firm of Lewis Brisbois to serve as counsel for Navajo Sage" and "[m]anagement will look to Mr. Hoffman or others in his firm for guidance on any matters of controversy." *Id.* at 3. An attorney for RH—Christopher Stachowiak—supported Razaghi's contentions in a letter emphasizing Razaghi's point; that is: the Sage Board was not authorized to hire alternative counsel. ECF No. 183-9 at 2-3.

Plaintiff's evidence is offered to illustrate that Hoffman was not working for Plaintiff or in Plaintiff's best interests. ECF No. 183 at 12. Rather, Hoffman was loyal to Razaghi and his interests.

*Id.*  Whether Plaintiff will be able to substantiate its arguments to prove fraud, RICO violations, or any of the other counts in the SAC is not at issue in the instant Motion.  The only question is whether the claims about Hoffman and his firm made by Plaintiff are legally and objectively baseless.  The Court finds that Plaintiff's claims do not meet this standard.

> 3.    *Defendants Contend the Hourly Rates Charged by Razaghi and the Reimbursements Paid to RH Related to Services for Other Tribal Entities, Allegations Made by Plaintiff in Support of the Fraud Claim, Were Known to and Approved by the Board and Audited Yearly by Independent Auditors.*

> a.    <u>The Hourly Rate Charged by Razaghi.</u>

In its SAC, Plaintiff alleges Razaghi impermissibly billed Sage Memorial at the rate of $495 an hour.  ECF No. 144 ¶ 85.  Defendants contend this allegation is without basis in fact and thus a violation of Rule 11 because Board meeting minutes demonstrate that the Sage executives knew of and repeatedly approved the rate charged by Razaghi.  ECF No. 174 at 17-18.  The meeting minutes to which Defendants point include:

- The September 2014 meeting minutes reflecting the Board reviewed and approved a report finding the fair market hourly rate charged by a president/partner of a hospital management entity to be between $340 and $530 an hour (ECF No. 147-2 at 41; ECF No. 147-4 at 3);

- The January 2015 meeting minutes reflecting a Board member stated she approved of the rates charged by RH and that management had done an excellent job (ECF No. 174-3 at 2);

- The October 2015 meeting minutes (ECF No. 174-4 at 3) reflecting the Board approved a budget for Fiscal Year 2016 containing Razaghi's $495 hourly rate (*Id.* at 44);

- The June 2016 meeting minutes reflecting the Board reviewed Sage's audited financial statements for Fiscal Years 2014 and 2015 finding the rate paid for services provided by RH was fair market value (ECF No. 174-4 at 86);

- The July 2016 meeting minutes evidencing El-Meligi's presentation to the Board regarding RH's hourly rates for management services, the Board approved a performance fee of $6,785,000 to RH for the work done in Fiscal Years 2013, 2014, and 2015 (*Id.* at 91-94);

- The September 2016 meeting minutes reflecting the Board's approval of the Fiscal Year 2017 budget containing Razaghi's $495 hourly rate ((ECF No. 174-2 at 11, 25);

- • The April 2017 meeting minutes reflecting the Board's discussion of information disclosed to the federal government arising from the False Claims Act investigation (ECF No. 174-5 at 7-8); and

- • The August 2017 meeting minutes reflecting the Board approved the Fiscal Year 2018 budget containing Razaghi's $495/hour rate (*Id.* at 13-14).

In sum, Defendants contend that the above-referenced meeting meetings, all of which were attended by El-Meligi, Dalgai or both, show there is no evidentiary support for Plaintiff's assertions that it did not know of and approve Razaghi's hourly rates.  ECF No. 174 at 18-19.

Plaintiff counters that Defendants' documents are misleading and do not demonstrate the Board knew of and consented to the large hikes in hourly rates over the course of Sage's professional relationship with Razaghi.  ECF No. 183 at 13-14.  Plaintiff points to the fact that the rate sheets were not provided to the Board as standalone documents.  *Id.* at 14.  Instead, the rate sheets were "typically one or two pages among budget packages that were sometimes more than one hundred pages long."  *Id.*  Also, these sheets did not focus on the RH employees whose payments were billed to Sage Memorial.  *Id.*  Plaintiff asserts that none of Razaghi's exhibits show an express authorization to raise Razaghi's compensation from $175 an hour to $495 an hour for Fiscal Years 2015, 2016, and 2017.  *Id.*  Plaintiff also asserts that following discussions with individuals intimately involved with the budget process, it became clear that Razaghi simply orchestrated an increase in his billing rate without either his company or he informing the Sage Board.  *Id.*

Plaintiff leans heavily on the timing and circumstances of the Second Amendment to the CEO Services Contract (the "Contract") to support this proposition.  *Id.*  Paragraph 5(A) of the initial redlined draft of the Contract states that Sage "agrees to pay RH a discounted rate of $175.00 per hour…"  ECF No. 183-16 at 44.  This version of the Contract (ECF No. 183-18) was approved by the Board at the June 16, 2017 meeting.  ECF No. 183-17 at 5.  The second version of the Contract was presented to the Board at a meeting on December 15, 2017.  ECF No. 183-19 at 4.  Razaghi told the Board that Hoffman was making "corrections to minor typographical errors" in the draft previously approved and would be attaching exhibits to the Board's materials that were unavailable

at the June 2017 meeting.[9]  *Id.*  The exhibits did not reflect corrections to "typographical errors," but an increase in Razaghi's hourly rate from $175 per hour to $495 per hour.  ECF No. 183 at 16.  Although the second version of the Contract was attached as part of the material to be considered at the December 2017 Board meeting, the Contract with the new, not yet approved rate for Razaghi was dated as if it was signed on June 16, 2017.  ECF No. 183-20 at 18.

> b.  Reimbursements Paid to RH Related to Services for Other Tribal Entities.

Defendants attack Plaintiff's allegations that Defendants improperly billed Sage Memorial for costs incurred for the benefit of other "638 entities."[10]  In an effort to demonstrate that this allegation is objectively baseless, Defendants point to several of Plaintiff's records showing the Board was fully informed and consented to RH's financial support of other 638 Entities before 2017.  ECF No. 174 at 20.  Defendants reference the following:

- November 2016 meeting minutes showing Razaghi reviewed the Board's prior desire and confirmation of collaboration with other 638 Entities to further develop these entities (ECF No. 174-6 at 2);

- November 2016 meeting minutes at which El-Meligi presented information on a recent management lobbying trip to Washington, D.C., intended to educate American politicians on the benefits of 638 Entities using private management for health care services (*Id.* at 8);

- April 2017 meeting minutes at which Razaghi spoke about a potential expansion and collaboration opportunity with a particular 638 Entity beneficial to Sage Memorial; and, the Board's direction to continue pursuing business opportunities beneficial to Sage (ECF No. 174-7 at 4);

- June 2017 meeting minutes at which Razaghi reviewed another trip to Washington, D.C. for lobbying purposes leading the Board to reiterate its directive for management to work with federal officials and other groups, including collaboration with other 638 Entities, to expand tribal healthcare through private management services (*Id.* at 12);

---

[9]  These "exhibits" were described by Razaghi as including "position descriptions for the CEO and Administrator/Co-CEO."  ECF No. 183-19 at 4.

[10]  The Indian Self-Determination and Education Assistance Act of 1975 allows certain government agencies to contract directly with federal recognized Indian tribes (the "638 Entities") and for the 638 Entities to have authority over how they administer the funds received from the federal contracts.  25 U.S.C. § 450, et seq.

- August 2017 meeting minutes at which Razaghi provided a status report on a project involving a prospective 638 Entity with which he was currently working (*Id.* at 19-20);

- Notes from an October 2017 meeting with Sage Board Chair Stenson Wauneka ("Wauneka") and the executive management team in which Wauneka authorized El-Meligi and Dalgai to attend another 638 Entity's board meeting as "management" (ECF No. 174-8 at 2);

- December 2017 meeting minutes at which Razaghi and Dalgai provided an update on management's efforts to assist and mentor other 638 Entities; and at which Razaghi told the Board that "unless the Board provides directive to expand the assistance to other entities, Management will continue to work with only those reported today" (*Id.* at 7);

- February 2018 meeting minutes reflecting Wauneka acknowledged "sponsoring other entities in pursuing their 638-tribal designation…" (*Id.* at 10); and

- July 2018 meeting minutes showing a Board member requested a report on the money paid to Board members from the other startup 638 Entities Sage and RH were assisting (*Id.* at 13).

Plaintiff does not dispute the Board's awareness of RH's involvement with other 638 Entities. ECF No. 183 at 17. Instead, Plaintiff asserts it is the scope of RH's involvement that is at issue as well as the extent to which Sage funds were used to aid RH's future business opportunities and not the future of Sage. *Id.* Plaintiff points to exhibits demonstrating (a) Sage had no grasp of the amount of its money that RH was spending on RH's work with the other 638 Entities and (b) Razaghi was not genuine about why he was working with the 638 Entities. These include:

- July 2018 meeting minutes during which a Board member told Razaghi that (i) Sage needed an MOU to ensure it was reimbursed for the 638 Entity-related expenses, (ii) there was concern because the Board had not seen a budget or expense report detailing the work with the 638 Entities, and (iii) the Board was requesting that management stop future expenditures on 638 Entity-related projects until the Board had a firmer grasp of the expense levels on each of the startups (ECF No. 183-22 at 3);

- A finance department restructuring plan, prepared for RH by the consulting firm BDO USA, LLP that billed Plaintiff over $232,000 (ECF No. 183-2 ¶ 39), that included language demonstrating the objective was "to produce an operating manual that can be used as a baseline for

all future turnaround/restructuring projects associated with Razaghi's future clients" (ECF No. 183-23 at 4);

- Defendants' formation of separate limited liability companies to manage the individual 638 Entities with Razaghi naming himself or one of his companies as the manager for each of the limited liability companies (ECF No. 183-24);

- Razaghi's representation in January 2018 to a 638 Entity that RH was retained by Four Corners Regional Health Center, Inc. (another 638 Entity) (ECF No. 183-26 at 2) in direct contrast to what Razaghi told the Sage Board during a July 2018 Board meeting; that is, that Razaghi was "not the CEO for these 638 projects; he is not interested in being the CEO for these organizations or Sage but continues as the CEO for Sage" (ECF No. 183-22 at 3).

Together, the above representations demonstrate that Defendants and Plaintiff not only argue but provide documentary support for their respective positions regarding the increase to Razaghi's hourly rates as well as the expenses Sage incurred related to Razaghi's involvement with the 638 Entities. It is these competing presentations that are evaluated by the Court to determine whether, as Defendants contend, Plaintiff's allegations in their SAC are legally and factually baseless thereby permitting Rule 11 sanctions to be imposed.

The information above demonstrates there is substantial disagreement regarding the facts and that Plaintiff's position does not suffer from such clear-cut lack of merit to warrant the sanctions Defendants seek. Rule 11 sanctions are reserved "for the rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Trust*, 859 F.2d at 1344. Plaintiff's position that Razaghi orchestrated a fraud on Plaintiff through the secret elevation of his hourly rates is not objectively baseless. *See* ECF No. 183 at 13-16. The same is true for Plaintiff's assertion that the scope of Defendants' expenditures on the 638 Entities was concealed from Plaintiff. *Id.* at 16-19. In contrast, Defendants provide documentary support for their position that Plaintiff's allegations are without legal or factual support. ECF No. 174 at 17-24. The Court expresses no opinion on whether Plaintiff will prevail on the merits of its claim. However, the Court cannot conclude, based

on this record, that Plaintiff's assertions regarding the hourly rates and 638 Entities are legally and factually baseless.

**B.**   Did Plaintiff's Counsel Conduct a Reasonable and Competent Inquiry Before Signing and Filing SAC?

The second prong of the *Mattel, Inc.* test requires Defendants to prove Plaintiff's counsel failed to conduct a reasonable and competent inquiry before signing and filing the SAC. Defendants contend that because members of Plaintiff's legal team (Bliss and Paul Padda) were retained by Sage Memorial and El-Meligi in prior litigation involving claims against Sage Memorial by the federal government, they knew or should have known the main tenets of their case against Defendants were not true. ECF No. 174 at 7.

The prior litigation involved a whistleblower complaint alleging Razaghi violated the False Claims Act. *Id.* at 8. The case involved a federal grand jury investigation and civil litigation with Indian Health Services in the District of New Mexico. *Id.* Defendants assert the facts alleged in the New Mexico civil litigation are "strikingly similar" to the facts at issue in the instant litigation, and that Bliss and Padda were directly involved in defending Sage Memorial in that case. *Id.* at 6-7. Defendants point to an August 2016 Board meeting in which Bliss walked through the False Claims Act allegations against Sage, its Board, Razaghi, and several other individuals. ECF No. 174-3 at 12-13. She informed the Board that, working with other attorneys at Lewis Brisbois, Sage had turned over more than 30,000 documents to the federal government as part of its grand jury investigation. *Id.* at 13. No criminal charges were brought by the federal government, and the civil lawsuit was dismissed. ECF No. 174 at 9.

Defendants contend that Bliss' and Padda's prior involvement with the civil and criminal cases—in which Sage was effectively vindicated—gave them "personal knowledge" of facts and circumstances alleged in Plaintiff's SAC. *Id.* at 23. More specifically, these attorneys became familiar with management contracts, Board meeting minutes, financial reports, and frequent audits of Sage Memorial while RH held the management contract. *Id.* Defendants assert Plaintiff's counsel effectively "repackaged" years-old allegations for a new time period even though they knew the accusations were false. *Id.* at 24.

Plaintiff counters that the past conduct (the federal grand jury probe leading to the False Claims Act lawsuit) and the allegations in the instant lawsuit are from two separate time periods and entirely distinct. ECF No. 183 at 6. The federal grand jury probe and False Claims Act litigation involved activities that ended no later than December 2014, whereas the allegations in the SAC did not commence until May 2015. *Id.* Even though discussions with the federal government pertaining to the grand jury probe occurred into 2016, Bliss and Padda provided no documents involving activities beyond December 2014. *Id.* at 7. Bliss and Padda state they had no knowledge of or access to documents regarding the behavior of Defendants beginning in May 2015. *Id.* Finally, and most importantly, Plaintiff argues the allegations in the SAC do not emanate solely from the False Claim Act lawsuit, grand jury investigation, or what Bliss and Padda knew and did not know during their respective representations of the Sage Board and El-Meligi. *Id.* at 7-8. Instead, from the onset of the litigation, Plaintiff conducted an extensive investigation that included the following steps:

- Retaining a former special agent with the Federal Bureau of Investigation to investigate the alleged fraud;

- Retaining a former special agent with the Internal Revenue Service to forensically analyze the financial transactions at issue;

- Interviews with members of the Sage Board who were present for material events discussed in the original Complaint;

- Additional interviews with members of the Sage Board who were present for events material to the allegations in the SAC;

- Interviews with Sage Memorial staff members, attorneys, and other outside professionals who could have knowledge relevant to the original Complaint;

- Additional interviews with Sage Memorial staff who may have had knowledge relevant to events material to the allegations in the SAC;

- Additional interviews with and collection of records from other outside professionals who may have had knowledge relevant to events material to the allegations in the SAC;

- Review of Board meetings minutes, correspondence, and email between and among Sage officials and Defendants;

- •    Review of additional Board meetings minutes, correspondence, and email between and among Sage officials and Defendants;

- •    Review of contract documents and accounting records relating to Sage's financial transactions;

- •    Review of additional contract documents and accounting records relating to Sage's financial transactions (including invoices and payments to RH); and

- •    Collection of records from Sage Memorial and its former counsel relating to events material to allegations in the SAC.

ECF No. 183-2 at ¶¶ 6-12.[11]

"The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded."  *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (citation omitted).  There must be some obvious flaw within a plaintiff's complaint that was easy to discover and would have led a plaintiff to conclude that the whole complaint or part of the complaint was frivolous.  *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) ("The district court [correctly] concluded that this suit was barred by the *res judicata* and collateral estoppel effects of the prior judgment. These findings are supported by the record, and a reasonable and competent inquiry would have led to the same conclusion.").  Based on the foregoing, the Court finds Defendants' contention that Plaintiff's counsel failed to conduct a reasonable and competent inquiry before filing the SAC is not well founded.  Padda's declaration delineates the steps taken to gather information.  The allegations made by Plaintiff have a sufficient basis in fact and in law to conclude no Rule 11 violation occurred.

## IV.    CONCLUSION

While the Court recommends denial of Defendants' Rule 11 Sanctions Motion, it rejects Plaintiff's request to impose sanctions on Defendants.  ECF No. 183 at 21.  Defendants attest that they met and conferred with opposing counsel and observed the 21-day safe harbor period pursuant to Rule 11(c)(2).  ECF No. 198 at 13.

---

[11]    Exhibit 183-2 includes a declaration by Padda who states the investigation is not over. *Id.* at ¶ 13.

**V.    RECOMMENDATION**

IT IS HEREBY RECOMMENDED that Defendants' Motion for Sanctions (ECF No. 174) be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff's request for sanctions argued in ECF No. 183 be DENIED.

DATED this 28th day of September, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).